FILED IN CHAMBERS
U.S.D.C. Atlanta

NOV 0 4 2005

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

KENNETH LEE CURTIS,

    Plaintiff,

v.

CHARMOIN VANDYKE, et al.,

    Defendants.

CIVIL ACTION

NO. 4:05-CV-037-RLV

### O R D E R

This is an action pursuant to 42 U.S.C. § 1983, in which the plaintiff alleges deliberate indifference to his serious medical needs. Pending before the court is defendant Charmoin Vandyke's[1] motion for summary judgment [Doc. No. 10], motion for leave to file excess pages in her brief for summary judgment [Doc. No. 11], motion to amend her "Statement of Material Facts As to Which There is No Genuine Issue To Be Tried" [Doc. No. 15], and a motion to disallow plaintiff's combined response to Vandyke's objections to

---

[1] In addition to defendant Vandyke, the plaintiff originally sued Jimmy Rogers, Alex Fadden, Tom Owens, and Jerry Davis, who were other employees of the Gordon County Sheriff's Department, all in their individual capacities. In the plaintiff's response to the defendants' motion for summary judgment, the plaintiff stated that he would be submitting a stipulation of dismissal as to defendants Jimmy Rogers, Tom Owens, and Jerry Davis. With regard to defendant Alex Fadden, the court notes that the defendants advised the plaintiff that there was not an employee at the Gordon County Jail by the name of Alex Fadden. Instead, an employee by the name of Alex Faegin worked at the jail. The plaintiff did not amend his complaint to add Alex Faegin as a party; therefore, the court concludes that Alex Faegin is not a party to this action.

1

the affidavits of Kenneth Curtis and Brian Higgenbotham [Doc. No. 23].

## I. Procedural History

The facts presented here are excerpted from the parties' Statement of Material Facts as well as the court's independent review of the record. Plaintiff Kenneth Lee Curtis brought this action against Vandyke under 42 U.S.C. § 1983, and the Eighth and Fourteenth Amendments to the Constitution of the United States, to redress the alleged harm he suffered as a result of Vandyke's alleged deliberate indifference to his medical condition while he was an inmate at the Gordon County Jail in Gordon County, Georgia.

From approximately mid-February 2003 through May 9, 2003, the plaintiff was incarcerated in the Gordon County Jail. As part of the orientation at Gordon County Jail, the inmates were told that all requests for medical treatment were to be made in writing and that, except for emergency situations, no verbal requests for medical treatment would be received or processed.[2] The plaintiff does not dispute that such a policy was in place, nor does the

---

[2] Pursuant to Policy 5.4 of the Gordon County Jail, medical request forms were to be available to inmates upon request and those forms were to be returned to the medical clerk for initial action once the inmate had completed the medical request form and given his or her consent to be treated. All medical request forms were then to be forwarded to qualified health personnel for the appropriate triage and treatment and, upon completion, the medical request form was to be placed in the inmate's medical file. If an inmate made a verbal request for medical treatment, jail personnel were instructed to advise the inmate to fill out a form.

plaintiff challenge the constitutionality of the Gordon County Jail's plan to deal with prisoners' non-emergency requests for medical treatment.

There is a factual dispute as to whether the plaintiff suffered from an infection and/or pre-existing condition of his feet prior to his incarceration or if the infection started after he was incarcerated. Regardless, in late February or early March 2003 while the plaintiff was incarcerated, the infection of the plaintiff's feet apparently worsened or started; as a result of his condition, the plaintiff spoke with Vandyke regarding his need for medication to treat the condition of his feet. Shortly after the plaintiff's conversation with Vandyke, the plaintiff's wife brought the plaintiff Loprox and Bactroban creams, which were medications to treat the infection on his feet. Several days later, according to the plaintiff, Vandyke took the creams back from the plaintiff because the plaintiff did not have a prescription. Vandyke instructed the plaintiff to fill out a request for medical attention form so that the plaintiff could see a physician and obtain a prescription for the creams. The plaintiff filled out the written request for medical treatment. The court notes that the plaintiff's written request was dated March 4, 2003.[3] Sometime

---

[3] On April 8, 2003, the plaintiff filled out and submitted a second request for medical attention to Vandyke which is unrelated to the facts of the current suit. On April 8, 2003, the plaintiff's reported complaint was "sever [sic] symptoms of sinus infections. Need to see nurse."

3

after submitting the request, Vandyke informed the plaintiff that the doctor did not want to see him and that she would simply give him the creams to use. Thereafter, Vandyke gave the plaintiff one tube of Loprox and one tube of Bactroban to use.

A factual dispute exists as to whether the plaintiff verbally requested treatment for his feet in the period from mid-April to May 7, 2003. Th plaintiff states that he made numerous verbal requests for treatment and for renewals of the prescriptive creams, while Vandyke denies that any verbal requests were made. The court notes that no written requests for medical treatment were made during this period.[4]

---

[4] The plaintiff's version of the period from mid-April to May 7, 2003 is as follows:

Sometime in mid-April 2003, the plaintiff stopped receiving refills for both creams. In response to the lack of refills, he spoke with Vandyke in mid-April 2003 and was given a refill of Bactroban only. The plaintiff asked Vandyke why he was not given the Loprox, and Vandyke responded with words to the effect that she did not know why he didn't receive it and that it wasn't sent to him. Vandyke did not instruct the plaintiff to fill out a medical request form concerning the refill. The plaintiff recalled speaking to Vandyke on a daily basis asking for a refill of the Loprox. By approximately April 28, 2003, the plaintiff ran out of the Bactroban refill as well. Thereafter, he began to ask Vandyke for a refill of Bactroban on a daily basis. Additionally, the plaintiff showed Vandyke his feet on numerous occasions.

On April 28, 29, and 30, 2003, the plaintiff showed Vandyke his feet. He described his feet as dripping and oozing with infection. On approximately May 2, 2003, the plaintiff again showed Vandyke his feet, and Vandyke told him that the refills of the creams were coming. Sometime later in that week, the plaintiff asked Vandyke again to see a doctor and he was told by Vandyke that he would have to wait until the following week. Vandyke never

4

On May 7, 2003, the plaintiff demanded to see a doctor regarding the condition of his feet, which apparently had worsened. Vandyke instructed him to fill out another medical request form, which the plaintiff did. Shortly thereafter, the plaintiff went to Sergeant Jimmy Rogers to discuss the lack of medical attention he had received from Vandyke.[5] After meeting with the plaintiff, Sergeant Rogers then went to Vandyke. Sergeant Rogers advised Vandyke that the plaintiff had complained about not receiving medication and proper medical treatment. Vandkye informed Sergeant Rogers that the plaintiff had submitted a medical request form complaining about the condition of his feet and that she had called a doctor to set up an appointment. Vandyke was then either ordered or requested by Sergeant Rogers to call the doctor's office a second time to set up a doctor's appointment for the plaintiff. On the afternoon of May 9, 2003, the plaintiff was taken to Dr. Anthony Captain. Dr. Captain diagnosed the plaintiff as suffering from bilateral cellulitis with noted excoriation, seepage and

---

instructed the plaintiff to fill out a medical request form at that time. On approximately May 3 or 4 2003, the plaintiff again asked Vandyke why he hadn't received a refill and she told him to take the used tube of Bactroban and see if he could squeeze any more cream out of it. On approximately May 3, 4, or 5, 2003, the plaintiff asked Vandyke for something to help him deal with the pain from his feet, and Vandyke responded that the plaintiff would have to buy something from the jail store.

[5] While the actual date of the plaintiff's meeting with Sergeant Jimmy Rogers is unclear, it is undisputed that such a meeting between the plaintiff and Sergeant Rogers took place.

drainage, bilateral tinea unguium, and possible underlying infection.

On February 14, 2005, the plaintiff filed a complaint, alleging (1) claims of deliberate indifference to his serious medical needs against Vandyke, Rogers, Fadden, and Owens pursuant to 42 U.S.C. § 1983 and (2) a claim of failure to train pursuant to 42 U.S.C. § 1983 against Sheriff Davis. In the plaintiff's response to the then defendants' motion for summary judgment, the plaintiff stated that he would be submitting a stipulation for dismissal to defense counsel as to defendants Rogers, Owens, and Davis.[6] As stated above, Fadden was never properly made a party to his suit. Therefore, the sole remaining defendant is Vandyke and the sole claim against Vandyke is a 42 U.S.C. § 1983 claim, alleging her deliberate indifference to the plaintiff's medical condition.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322

---

[6] Although the plaintiff never followed through with this commitment, the court accepts counsel's statement as the functional equivalent of a formal dismissal.

(1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his or her on which he or she bears the ultimate burden of proof. Id. at 322-23. Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.

### III. Legal Discussion

In deciding the current motion for summary judgment, the court must decide whether Vandyke is entitled to qualified immunity. The Eleventh Circuit has a two-step analysis for applying the qualified immunity test. First, the defendant government official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful act occurred. Then, the burden shifts to the plaintiff to demonstrate that the defendant violated clearly established constitutional law. Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983). See also Hartsfield v. Lemacks, 50 F.3d 950 (11th Cir. 1995). In this case, the parties do not dispute that

7

Vandyke was acting within the scope of her discretionary authority. Thus, this court must decide whether the plaintiff's assertions, accepted as true, state a claim for the violation of any rights secured under federal law or the United States Constitution. See Saucier v. Katz, 533 U.S. 194, 201 (2001)(noting that the next inquiry in the qualified immunity analysis is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?")

To be clearly established, the "contours" of an asserted constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). In Vandyke's reply brief, Vandyke argues:

> the language of the Eighth Amendment is insufficient to have given this Defendant fair warning that her conduct was illegal under the circumstances of the present case so as to strip this Defendant of qualified immunity because the words of the Eighth Amendment are not so clear and the conduct herein is not so bad that case law is not needed to establish that the conduct cannot be lawful.

The defendant cites Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) in support of her argument. However, Vandyke's reliance on Vinyard is misplaced. The facts and legal analysis of Vinyard addressed the scope of qualified immunity in the context of an excessive force claim, not a claim for deliberate indifference to

8

the medical needs of an inmate as is the case in the current suit.

It is well established that a prison official's deliberate indifference to a prisoner's serious medical needs gives rise to a constitutional claim. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).[7] See also Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989); Aldridge v. Montgomery, 753 F.2d 970, 972-973 (11th Cir. 1985)(failure to administer physician-prescribed medication to a prisoner demonstrates deliberate indifference); Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704 (11th Cir. 1985)(necessary medical treatment delayed for non-medical reasons makes out a case of deliberate indifference); and Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11th Cir. 1997)(case law clearly established that an official is deliberately indifferent when he intentionally delays access to medical treatment knowing inmate has urgent medical treatment that would be exacerbated by delay.) Additionally, a delay in treatment of serious and painful injuries has also been clearly recognized as rising to the level of a constitutional claim. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).

In her motion for summary judgment, Vandyke argues that the

---

[7] The Supreme Court in Estelle held that deliberate indifference to serious medical needs is proscribed by the Eighth Amendment's prohibition against cruel and unusual punishment. The Supreme Court in Estelle cautioned, however, that only those claims which rose to the level of a constitutional tort would be permitted to proceed under 42 U.S.C. § 1983. Accidents, mistakes, negligence, and medical malpractice are not constitutional violations merely because the victim is a prisoner.

relevant case law did not provide her with "fair warning" that her actions were unconstitutional. The court disagrees. Again, Vandyke fails to recognize the difference between case law regarding an excessive force claim and case law regarding a deliberate indifference to the medical needs claim. The court notes that for purposes of qualified immunity analysis in the context of a deliberate indifference to the medical needs of an inmate claim that the pre-existing law must give officials some sense of the amount of time that constitutes actionable delay. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994)(noting that the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay.)

The case law provides guidance that a few hours' delay in receiving medical care for emergency needs such as broken bones and bleeding cuts may constitute deliberate indifference. See e.g. Brown, 894 F.2d at 1538. Likewise, delayed treatment for injuries that are of a lesser degree of immediacy than broken bones and bleeding cuts may also give rise to constitutional claims. See Carswell v. Bay County, 854 F.2d 454 (11th Cir. 1988). See also Harris, 21 F.3d at 394. In this case, the plaintiff filed a written request for medical treatment on May 7, 2003, and received treatment on May 9, 2003, a delay of two days.[8] For a condition

---

[8] The court notes that the only reason that can be inferred from the record, which includes the affidavits of Vandyke and Sergeant Rogers, for the two-day delay was that the doctor had not called Vandyke back to set up the plaintiff's appointment. The court concludes that the affidavits of Vandyke and Sergeant Rogers

determined to be serious, such a delay in medical treatment can give rise to a constitutional law under the pre-existing law. Furthermore, Vandyke has failed to proffer any medical reason for the delay in treating the plaintiff. Bozeman v. Orum, 422 F.3d 1265, 1273 (11th Cir. 2005)(noting that the right reason for the delay can make a delay of any duration tolerable). Therefore, the court concludes that viewing the allegations of the plaintiff in the most favorable light, a reasonable Gordon County jail employee should have known that delaying treatment for a serious medical need for several days for a non-medical reason may violate an inmate's constitutional rights under the clearly established legal norms in this Circuit.

Having determined that Vandyke's action or inaction potentially violated clearly established constitutional law, the court must next engage in another two-step analysis. First, the court must decide whether there was evidence of a serious medical need; and if so, the court must then consider whether Vandyke's response to that need amounted to deliberate indifference. See Mandel, 888 F.2d at 788. Put another way, the alleged deprivation must be, objectively "sufficiently serious" and, second, the prison official must, subjectively, have acted with "deliberate indifference" to the inmate's medical needs. See also Farmer v. Brennan, 511 U.S. 825 (1994). To satisfy the subjective element of

---

could lead a fact-finder to infer that Sergeant Rogers believed that Vandyke's response to the plaintiff's written medical request was inadequate because Sergeant Rogers either ordered and/or requested Vandyke to call the doctor's office for a second time to insure that the plaintiff saw a physician.

deliberate indifference to the plaintiff's serious medical need, the plaintiff must prove three things: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than [gross] negligence." Bozeman, 422 F.3d at 1272 citing Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004). In fact, the Eleventh Circuit has held that when a prison guard ignores, without explanation, a prisoner's serious medical condition that is known or obvious to him, the fact-finder may infer deliberate indifference. Harris, 21 F.3d at 393.

For the purposes of this motion for summary judgment, Vandyke does not dispute that the plaintiff's foot infection was an objectively serious medical need. Therefore, this court must address only whether the plaintiff has demonstrated that Vandyke's action or inaction satisfied the subjective prong of the deliberate indifference test. Whether Vandyke possessed the level of subjective knowledge necessary to impute upon Vandyke a sufficiently blameworthy state of mind--from the time the plaintiff filed his request for medical assistance on May 7, 2003, to May 9, 2003, when the plaintiff received an examination by a physician--is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. Bozeman, 422 F.3d at 1272.

In addressing the subjective component of the deliberate indifference test, the court concludes that a fact-finder could find that the plaintiff's medical condition was subjectively known to Vandyke. Even if this court were to assume that none of the events alleged by the plaintiff between mid-April and prior to the

plaintiff's filing of a written request for medical treatment on May 7, 2003, took place,[9] other facts in the record could lead a fact-finder to conclude that the plaintiff informed Vandyke in late February or early March of 2003 that he needed medication to treat his feet. Vandyke places great emphasis on the fact that she complied with all of the plaintiff's written requests for medical treatment. However, Vandyke's argument undercuts her own motion for summary judgment because a fact-finder could conclude that the plaintiff's first written request for medical treatment form received by Vandyke on March 4, 2003, which stated "see you about feet. Sore, swelled bad, infected bad," should have put Vandyke on notice of the plaintiff's medical condition. Additionally, a fact-finder may conclude that Vandyke knew of a substantial risk to the plaintiff from the very fact that the medical need was, as is conceded by Vandyke, objectively obvious. See Farmer, 511 U.S. at 841. With regard to the second prong, i.e., Vandyke's subjective disregard to the risk, there is evidence that Vandyke failed to obtain treatment for the plaintiff for two days despite her

---

[9] The court notes that Vandyke filed two "notices of objections." Vandyke's "notices of objections" addressed the affidavits of the plaintiff and the plaintiff's cell-mate, Brian Higgenbotham [Doc. Nos. 16 and 17]. The court interprets Vandyke's "notices of objections" as motions to strike certain portions of the above affidavits. The court notes that the plaintiff filed a response to Vandyke's "notices of objections" [Doc. No. 22]. In response, Vandyke submitted a motion to disallow the plaintiff's combined response to Vandyke's objections to the affidavits of Kenneth Curtis and Brian Higgenbotham [Doc. No. 23]. However, the court found Vandyke's "notices of objections" are moot because the court did not base its current decision on the facts alleged to occur between mid-April and May 7, 2003, which are the subject of a large portion of the affidavits.

knowledge of the plaintiff's serious need for medical care.

Moreover, and most significant for the purposes of deciding this motion for summary judgment, a question of fact exists as to whether Vandyke's action or inaction in delaying the plaintiff's treatment for two days without proffering a medical reason for the delay was more than negligence. A fact-finder might conclude that Vandyke's action and/or inaction was reflective of Vandyke's deliberate indifference to the plaintiff's medical needs. The court concludes that the subjective component of deliberate indifference, i.e., whether Vandyke had a sufficiently culpable state of mind so that her alleged wrongdoing amounted to punishment of the plaintiff, is a question for the fact-finder. See Wilson v. Seiter, 501 U.S. 294, 298-305 (1991). Therefore, Vandyke is not entitled to the defense of qualified immunity.

The court notes that denying Vandyke's qualified immunity defense on Vandyke's current motion for summary judgment does not render Vandyke liable on the plaintiff's deliberate indifference claim. Instead, this court's denial of Vandyke's qualified immunity defense means only that the plaintiff's claim against Vandyke may proceed to trial. At trial, the facts regarding deliberate indifference may be further developed, and the jury will have to determine whether Vandyke was deliberately indifferent to the plaintiff's serious medical needs.

## IV. Conclusion

For the reasons set forth above, the court DENIES Vandyke's motion for summary judgment [Doc. No. 10]. Additionally, the court GRANTS both Vandyke's motion for leave to file excess pages in her brief titled in "In Support of Motion for Summary Judgment" [Doc. No. 11] and Vandyke's motion to amend her "Statement of Material Facts As to Which There is No Genuine Issue to Be Tried" [Doc. No. 15]. Vandyke's notices of objections [Doc. Nos. 16 and 17] are treated as motions to strike and are DISMISSED as moot. Lastly, Vandyke's motion to disallow plaintiff's combined response to Vandyke's objections to the affidavits of Kenneth Curtis and Brian Higgenbotham [Doc. No. 23] is DISMISSED as moot.

SO ORDERED, this 4th day of November, 2005.

/s/ Robert L. Vining, Jr.
ROBERT L. VINING, JR.
Senior United States District Judge